**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 10, 2017**

# In the Court of Appeals of Georgia

A17A1041. PERFORMANCE AUTO COLLISION CENTER INCORPORATED v. BRIDGEFIELD CASUALTY INSURANCE COMPANY.

MCMILLIAN, Judge.

Performance Auto Collision Center Incorporated ("Performance Auto") appeals from the trial court's order granting summary judgment to Bridgefield Casualty Insurance Company ("Bridgefield") in this dispute over reclassification of Performance Auto's workers for purposes of determining the total amount of premium due under a workers' compensation policy issued by Bridgefield for the policy year beginning in February 2013 and ending in February 2014 (the "2013-2014 Policy Period"). As more fully set forth below, we now reverse.

Performance Auto operates an automobile repair and body shop at several locations in Alpharetta, Georgia. In 2012, Performance Auto applied for workers'

compensation insurance with Bridgefield. At the time the initial policy was issued and during the subsequent renewal at issue here, Performance Auto's employees were assigned to two separate classifications – clerical and auto body painting/repair – for the purpose of assessing the insurable risk which, along with payroll, would broadly speaking determine the initial policy premium.[1] However, under the terms of the Policy, and consistent with industry custom,[2] the initial assessment of premium at the beginning of the policy period was considered to be an estimate, and the final premium amount due could be adjusted based on an audit conducted at the end of the policy period. Specifically, Part Five of the policy provided in pertinent part:

E. Final Premium

The Premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the

---

[1] More specifically, premiums under a workers compensation policy are determined by multiplying the payroll or other remuneration payable during the policy period for each employee by each employee's classification rate, with adjustments for certain modifiers, ratings, and discounts.

[2] See *Amtrust North America, Inc. v. Smith*, 315 Ga. App. 133, 133-34 (726 SE2d 628) (2012); *Dennis Perry Homes, Inc. v. Companion Property & Cas. Ins. Co.,* 311 Ga. App. 706 (716 SE2d 798) (2011).

business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by the policy.[3]

In October 2014, Bridgefield performed a final audit for the 2013-2014 Policy Period ("Final Audit"), which resulted in a reclassification of certain employees and an increase of $27,497.38 in the final premium amount billed to Performance Auto.[4] Performance Auto disputed the reclassification and refused to pay the final premium amount, and Bridgefield filed this suit to recover the balance it alleged was due. Performance Auto filed an answer and counterclaim contending that through an error committed by a third party, it had overpaid its monthly workers compensation premiums to Bridgefield by $7246.90 a month and thus sought a refund of that

---

[3] The Policy also contained provisions governing the calculation of the premium in the event the Policy was canceled prior to the end of the policy term, which are not at issue here.

[4] The reclassification appeared to be based in part on comparison of wages for various positions and a review of the job functions of certain clerical and sales positions, which concluded that these positions were also carrying out other "body shop duties."

3

amount, or a set-off of that amount against any amount it might be found to be liable to Bridgefield for the final premium.

Bridgefield filed a motion for summary judgment based on the Final Audit and a December 2013 inspection and classification report conducted at Performance Auto's behest by the National Council on Compensation Insurance ("NCCI"), which found that the front office workers should be classified as auto body repair instead of clerical because the front office area was not physically separated from the body repair part of the building by walls and partitions.[5] Bridgefield also sought dismissal of Performance Auto's counterclaim because Bridgefield had no relationship with the third party to which Performance allegedly overpaid its premiums.

Performance Auto opposed the motion, arguing that an audit performed by a different insurer for the 2014-2015 year ("Subsequent Audit"), supported its classification of certain front office workers as clerical. Performance Auto also submitted the affidavit of its owner, Sal Akturk ("Akturk affidavit"), who opined that

[5] In its motion for summary judgment, Bridgefield also contended that Performance Auto's own estimates of its payroll as reflected on its 2012-2013 policy year application supported the reclassification. Performance Auto argues reliance on its application was inappropriate, and Bridgefield now says that it did not rely on the application as evidence of the correct employee classification at the end of the 2013-2014 Policy Period. Thus, we will not consider this evidence as supporting its motion for summary judgment.

4

the job duties, descriptions, functions, and physical locations of its employees had remained the same during the 2013-2014 Policy Period through the date of the Subsequent Audit. Performance Auto also submitted the affidavit of its insurance account representative Allison Wooten ("Wooten affidavit"), who opined she was familiar with Performance Auto's business operations and physical layout during both the Policy Period and Subsequent Audit time frame and that its business operations, including the duties of its employees, and physical layout had remained the same during the two consecutive policy periods. Wooten also attached photographs to her affidavit, which she averred showed that the front office area was physically separated from the repair part of the shop by partitions and walls, contrary to the findings stated in the NCCI report. Performance Auto argues that this evidence is sufficient to create a jury issue concerning the factors that should be used to classify its employees and which employees should be classified as clerical or body repair workers.

We agree.[6] Although Bridgefield argues that the Subsequent Audit was irrelevant because it was performed for a different policy period and for a different insurer, the Akturk and Wooten affidavits sufficiently established that Performance Auto's business operations, including the job duties, descriptions and functions of its employees, as well as its physical layout of the disputed front office area, had remained unchanged from the Policy Period to the time the Subsequent Audit was conducted. And contrary to Bridgefield's contention on appeal, Wooten did not offer this opinion as an expert, but as someone who was familiar with Performance Auto's business during the relevant time periods in connection with the very policy at issue. Performance Auto presented evidence showing that the two audits classified employees doing the same jobs differently, as well as sufficient evidence, including the photographs attached to Wooten's affidavit, to create a disputed issue of fact for the jury to resolve concerning the classification of workers. Although Bridgefield

[6] Although Performance Auto also asserts on appeal that the trial court erroneously construed the Policy to prohibit it from presenting any evidence to dispute Bridgefield's Final Audit, the record reflects that Performance Auto was accorded the opportunity to present argument, both oral and written, in opposition to Bridgefield's motion and accompanying evidence such that no due process violation has been shown. Further, Bridgefield concedes that Performance Auto was permitted under the terms of the Policy and case law to challenge the results of the audit. See *Dennis Perry Homes,* 311 Ga. App. at 709-710.

argues in its reply brief that the Subsequent Audit was not specific enough, our review shows that it contains a list of the specific employees classified by the auditor[7] as clerical, and it is for a jury to sort out how to classify the disputed employees under proper classification methods.[8] Accordingly, the trial court's order granting Bridgefield's motion for summary judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed. Barnes, P. J., and Mercier, J., concur.*

---

[7] The Auditor is listed as "Leigh Freeman," and there is no allegation that this auditor was not qualified to render such a report.

[8] It appears that the NCCI report was based primarily on the physical layout of the office, while the Final Premium Audit concluded that "the wages being paid would indicate that there are no real clerical positions and the employees are carrying out service writing and estimating type duties or other body shop operations."

7